UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

SHERRI HURT,

    Plaintiff,

v.

SCHOOL DISTRICT NO. 1 IN THE COUNTY OF DENVER AND STATE OF COLORADO,

    Defendant.

## COMPLAINT AND JURY TRIAL DEMAND

The Plaintiff, Sherri Hurt, by and through counsel, hereby files the following Complaint and Jury Trial Demand against the Defendant:

## NATURE OF THE ACTION

This action is brought to redress the Defendant's violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq*. Specifically, the Plaintiff alleges that the Defendant: refused to make reasonable accommodation for her known physical disability in violation of 42 U.S.C. §12112(a) and (b); retaliated against her for exercising her rights under the ADA in violation of 42 U.S.C. §12203; and discharged her from employment on the basis of her disability in violation of 42 U.S.C. § 12112.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is proper pursuant to 42 U.S.C. § 12117(a) and 28 U.S.C. §1331.

2. The Defendant is located, the Plaintiff resides, and the events and omissions giving rise to the claims asserted herein occurred, in the State of Colorado. Therefore, venue is proper pursuant to 28 U.S.C. §1391(b).

## ADMINISTRATIVE PROCESS

3. The allegations set forth in paragraphs 1 through 2 of this Complaint and Jury Trial Demand are incorporated herein by reference.

4. The Plaintiff timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), i.e., Charge No. 541-2020-01203.

5. On January 22, 2021, the United States Department of Justice issued to Ms. Hurt a notice of right-to-sue regarding her charge of discrimination. The notice gave Ms. Hurt the right to institute a civil action in federal court under the ADA within 90 days of her receipt of the notice.

6. All administrative prerequisites to filing this action have been met.

## PARTIES

7. The allegations set forth in paragraphs 1 through 6 of this Complaint and Jury Trial Demand are incorporated herein by reference.

8. The Plaintiff, Sherri Hurt ("Ms. Hurt"), is a resident of Aurora, Colorado. Prior to the termination of her employment, Ms. Hurt worked for the Defendant as an Office Support professional in its Medicaid department.

9. The Defendant, School District No. 1 in the County of Denver and State of Colorado ("School District" or "District"), is a Colorado public school district duly constituted and existing pursuant to applicable Colorado laws. The Defendant's schools and administrative

offices are located in Denver, Colorado.  The School District is a large employer, with more than 10,000 employees.

## GENERAL ALLEGATIONS

10. The allegations set forth in paragraphs 1 through 9 of this Complaint and Jury Trial Demand are incorporated herein by reference.

11. The School District hired Ms. Hurt to work as an Office Support professional in its Medicaid department in or about 2007.  Ms. Hurt's duties included, among others, entering data related to Medicaid services provided at schools in the District.

12. In 2008, doctors diagnosed Ms. Hurt with multiple sclerosis ("MS").  Although her symptoms presented some challenges, Ms. Hurt performed all of her job duties successfully and without accommodation from 2008 until 2015.

13. By 2015, symptoms related to Ms. Hurt's MS had progressed to the point where walking became difficult for her.  Ms. Hurt could walk with a cane or walker, but not for long distances.

14. Seeking ways to overcome the challenges brought about by her MS symptoms, Ms. Hurt spoke with her then-supervisor, Medicaid Supervisor Rob Hendershot ("Mr. Hendershot"), about possible workplace accommodations.

15. Mr. Hendershot and Ms. Hurt agreed that to have Ms. Hurt work from home two days a week might ease some of the difficulties she faced in getting to the office, such as walking, standing, and climbing stairs.

16. Working from home two days a week helped Ms. Hurt in the manner she and Mr. Hendershot anticipated it would.  However, Ms. Hurt's MS symptoms continued to progress and

worsen. For example, Ms. Hurt's ability to walk continued to deteriorate; MS also affected Ms. Hurt's ability to control her bladder. Eventually, Ms. Hurt became wheelchair-bound and lost the ability to drive.

17. As Ms. Hurt's symptoms progressed, she and Mr. Hendershot worked together to adjust her work-from-home accommodation. Namely, they increased the amount of time Ms. Hurt spent working from home and decreased the amount of time she was required to be in the District's Medicaid office.

18. Ms. Hurt worked from home full-time as an accommodation for her MS symptoms. The School District moved Ms. Hurt's District-provided computer and other equipment to her home so that she could work as productively there as at her workstation in the Medicaid office.

19. Ms. Hurt's work-from-home accommodation worked well for a number of years. The accommodation was cost-neutral to the School District, and it allowed Ms. Hurt to be more productive than she could have been from the Medicaid office—e.g., from home, she could be in close proximity to the bathroom, and she was not faced with the accessibility challenges she faced in the office as a wheelchair-bound person.

20. During the period that Ms. Hurt worked from home, there were times that Mr. Hendershot or other District managers required her presence in the office. On those occasions, Mr. Hendershot generally provided Ms. Hurt with reasonable notice—i.e. 24 hours or so—which allowed Ms. Hurt enough time to arrange for transportation to the District's downtown Denver Medicaid office.

21. Mr. Hendershot passed away during the 2018-19 school year. With Mr. Hendershot's passing, his supervisor, Tom O'Keefe, the School District's Director of Operations for Student Equity and Opportunity, took on a more active role in the management of the Medicaid Department.

22. In April 2019, Mr. O'Keefe scheduled a meeting with Ms. Hurt to inquire about her work-from-home accommodation, which by that time had been in place, allowing Ms. Hurt to perform successfully all of her duties, for several years. Mr. O'Keefe informed Ms. Hurt that, going forward, he expected her to work primarily in the Medicaid office instead of at home, unless she could provide the District with updated medical documentation supporting her need to work remotely.

23. Ms. Hurt scheduled an appointment with her physician, Dr. Peter Bergman, which took place in or about August 2019. Dr. Bergman filled out a form on School District letterhead called "Medical Verification in Response to an Accommodation Request." On the form, Dr. Bergman identified Ms. Hurt's medical diagnosis—i.e. progressive, non-relapsing multiple sclerosis. Dr. Bergman noted that MS affected a number of Ms. Hurt's major life activities—i.e. toileting, walking, standing, and lifting. Dr. Bergman recommended that Ms. Hurt work from home on a permanent basis, but left room for the possibility that she might also work in the office when possible.

24. Ms. Hurt gave the School District a copy of Dr. Bergman's completed medical verification form in or about early-September 2019. The School District treated Ms. Hurt's providing updated medical documentation regarding her existing accommodation, which she provided in response to Mr. O'Keefe's directive, as a request for a new accommodation.

Accordingly, the School District's ADA Coordinator contacted Ms. Hurt to schedule a meeting where they would discuss her request to continue working from home.

25. The meeting took place on or about September 23, 2019. During the meeting, Ms. Hurt explained her medical condition and detailed the physical limitations it causes her to experience. Ms. Hurt discussed her work-from-home accommodation, explaining how it had been effective in helping her perform the essential functions of her job over the last several years.

26. During the September 23, 2019 meeting, a District Human Resources official told Ms. Hurt that the District planned to change some of her job duties. Most pertinent here, the Human Resources official explained that, once the changes went into effect, Ms. Hurt would be expected to travel around the District to various schools, where she would be expected to provide in-person training and materials to staff members at those schools who interacted with the Medicaid Department. Ms. Hurt did not view that change as posing significant challenges—she told those in attendance at the meeting that if the District expected her to visit schools in order to provide in-person training, she would merely need reasonable advance notice in order to arrange transportation.

27. In or about early October 2019, the District began formalizing changes to Ms. Hurt's job description. As revised, the job description emphasized the duty of traveling to various schools to provide materials and in-person training.

28. It took several months for the District to finalize the process of changing Ms. Hurt's job description. In January 2020, after the process was completed, the District's new ADA Coordinator, Kim Crouch, contacted Ms. Hurt to see if she wanted to provide the District

with any additional information or documentation regarding her medical condition or requested accommodations.  Having provided the District with a completed medical documentation form from her physician, and having asked that she be given reasonable notice when she would be tasked with travelling to schools, Ms. Hurt could think of nothing else to share.

29.    Ms. Crouch contacted Ms. Hurt several days later to schedule a meeting, ostensibly to discuss whether the District would continue accommodating Ms. Hurt's disability by allowing her to continue working from home, and by giving her approximately one day's notice when she needed to travel to District schools.

30.    The meeting took place on or about January 28, 2020.  During the meeting, Ms. Crouch confirmed that the changes to Ms. Hurt's job that had been contemplated and discussed in September 2019 had now been formalized and would soon be implemented.  Ms. Crouch pointed out that, as amended, Ms. Hurt's job required travel to District schools.  Then, pointing to the portion of Dr. Bergman's medical documentation form where he recommended that Ms. Hurt work from home on a permanent basis, Ms. Crouch insisted that Ms. Hurt had failed to provide sufficient documentation that she was able to travel around the District, as the job now required.  Rather, Ms. Crouch extrapolated from Dr. Bergman's recommendation that Ms. Hurt was permanently homebound.  On that basis, Ms. Crouch maintained the District had no choice but to deny Ms. Hurt's accommodation request.

31.    Ms. Hurt was not homebound, as she explained to District officials in September 2019, and as Dr. Bergman indicated on the medical documentation form he completed.  While Dr. Bergman suggested Ms. Hurt should work from home on a permanent basis, he also recommended she should work from home <u>when possible</u> due to her MS symptoms.

32. Neither Ms. Crouch nor any other District administrator asked Ms. Hurt to clarify any confusion created by Dr. Bergman's recommendations. If they had, Ms. Hurt could have asked Dr. Bergman to clarify that she <u>was</u> able to travel with reasonable notice, and she should work from home on days when she did not need to be at a school.

33. The School District, however, did not afford Ms. Hurt that opportunity. Instead, Ms. Crouch informed Ms. Hurt the District was denying her accommodation request and removing her from the position she had held for well over a decade. As support for the District's determination, Ms. Crouch indicated Ms. Hurt's revised position would require her to travel 80% of the time to provide training about Medicaid processes. According to Ms. Crouch, that work could not be done from home.

34. Ms. Crouch was incorrect. Trainings could have been conducted on virtual platforms, such as Zoom, WebEx, or Google. Materials related to those trainings could have been sent to participants electronically, whether by email or online document sharing platforms, such as Dropbox or Google Drive.

35. Given the power disparity between employer and employee, Ms. Hurt was not in a position to argue the merits of the District's faulty decision. Instead, she turned her focus toward trying to salvage her employment, even if that meant learning to do a new job in the District. To that end, Ms. Hurt asked Ms. Crouch and other administrators in attendance at the January 28, 2020 meeting to help her locate a position in the District that she could fill in a work-from-home capacity, consistent with Dr. Bergman's recommendation.

36. Ms. Crouch indicated the District would try to find Ms. Hurt a position she could fill from home. On March 3, 2020, Ms. Crouch reported to Ms. Hurt that she had been unable to

locate <u>any</u> positions among all the vacancies in the District that Ms. Hurt could fill in a remote work capacity.

37. Ironically, a few weeks later thousands of District employees began working from home after the COVID-19 pandemic brought about widespread school and District office closures.

38. In claiming there was not a single position in the District Ms. Hurt could fill in a remote work capacity, Ms. Crouch gave Ms. Hurt two options—i.e. she could resign from her employment with the District, or the District would proceed to terminate her employment.

39. Ms. Hurt did not resign. Instead, she appealed Ms. Crouch's decision to deny her the accommodation requests via the District's internal process for doing so.

40. The District's Director of Benefits, Adam Barnett, reviewed Ms. Hurt's appeal. In denying the appeal, Mr. Barnett asserted Ms. Hurt's revised job description called on her to travel 40% of the time (Ms. Crouch earlier set that percentage at 80%), and that it would have been an "undue hardship" on the Medicaid Department to inform Ms. Hurt when she would be expected to visit schools. Like Ms. Crouch, Mr. Barnett told Ms. Hurt that if she chose not to resign, the District would terminate her employment.

41. Ms. Hurt did not resign, and, on April 6, 2020, the District made good on its threats to terminate her employment.

42. In terminating Ms. Hurt's employment, the District deprived her of, *inter alia*, wages, benefits, retirement contributions, and employment opportunities.

## FIRST CLAIM FOR RELIEF
**Americans with Disabilities Act – Denial of Reasonable Accommodation**

43. The allegations set forth in paragraphs 1 through 42 of this Complaint and Jury Trial Demand are incorporated herein by reference.

44. The Plaintiff is and was at all times relevant hereto an individual with a "disability" as that term is defined in 42 U.S.C. §12102(2) – *i.e.,* she has a physical impairment which substantially limits one or more of his major life activities, she has a record of such an impairment, and she was/is regarded by the Defendant as having such an impairment.

45. The Plaintiff is and was at all times relevant hereto a "qualified individual with a disability" as that term is defined in 42 U.S.C. §12111(8) – *i.e.*, she was and is able, with reasonable accommodation, to perform the essential functions of her position, both before and after the District revised her job description.

46. The Defendant discriminated against the Plaintiff on the basis of disability by not making reasonable accommodation for the Plaintiff's known physical disability, in violation of 42 U.S.C. §12112(a) and (b)(5)(A).

## SECOND CLAIM FOR RELIEF
**Americans with Disabilities Act – Retaliation**

47. The allegations set forth in paragraphs 1 through 46 of this Complaint and Jury Trial Demand are incorporated herein by reference.

48. The Plaintiff exercised her rights under the ADA by seeking reasonable accommodation for her disability, and she also opposed the Defendant's refusal to make such reasonable accommodation in violation of the ADA.

49. The Defendant retaliated against the Plaintiff for the Plaintiff's actions in seeking reasonable accommodation and in opposing the Defendant's refusal to make such reasonable accommodation in violation of 42 U.S.C. §12203.

### THIRD CLAIM FOR RELIEF
### Americans with Disabilities Act – Discriminatory Discharge

50. The allegations set forth in paragraphs 1 through 49 of this Complaint and Jury Trial Demand are incorporated herein by reference.

51. The Plaintiff was and is qualified, with reasonable accommodation, to perform all the essential functions of her job, both before and after the District revised her job description.

52. The Defendant terminated Plaintiff's employment based on her disability. The Plaintiff's disability was a determining factor in the Defendant's decision to terminate her employment.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Sherri Hurt, respectfully requests that this Court enter judgment for the Plaintiff and against the Defendant on all claims for relief and award to the Plaintiff:

a. damages for the Plaintiff's lost past and future wages and employment benefits, including but not limited to lost health, disability and life insurance benefits and lost retirement benefits;

b. damages for all emotional injuries suffered by the Plaintiff in an amount to be determined at trial;

    c.    prejudgment and postjudgment interest;

    d.    costs and reasonable attorney fees; and

    e.    such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

The Plaintiff hereby demands that all issues triable to a jury in this action be tried to a jury.

Dated this 24th day of March 2021.

Respectfully submitted,

/s/ *Erik G. Bradberry*
Erik G. Bradberry, #49894
Colorado Education Association
1500 Grant Street
Denver, CO 80203
(303) 837-1500
Fax: (303) 861-2039
ebradberry@coloradoea.org
Attorney for Plaintiff

**Plaintiff's Address:**
1640 Ironton Street
Aurora, CO 80010